United States District Court
Southern District of Texas
FILED

MAR 2 0 2003

Michael N. Milby
Clerk of Court

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## BROWNSVILLE DIVISION

| | |
|---|---|
| NORMA ORTIZ and CATALINA GARCIA § | |
| § | |
| **Plaintiffs** § | |
| § | |
| vs. § | CIVIL ACTION NO. B-02-184 |
| § | |
| BROWNSVILLE INDEPENDENT § | |
| SCHOOL DISTRICT, RANDY DUNN, § | |
| NOE SAUCEDA, and EDDIE ERRISURIZ, § | |
| in their official and individual capacity, and § | |
| employees, agents, and all those acting in § | |
| concert or at their discretion § | |
| § | |
| **Defendants** § | |

## DEFENDANT BROWNSVILLE INDEPENDENT SCHOOL DISTRICT'S MOTION FOR PROTECTIVE ORDER

TO THE HONORABLE JUDGE OF SAID COURT:

NOW COMES Defendant, BROWNSVILLE INDEPENDENT SCHOOL DISTRICT (hereinafter "Brownsville ISD"), and files this its Motion for Protective Order pursuant to Rule 26(c) of the Federal Rules of Civil Procedure. In support thereof, Defendant respectfully shows the Court as follows:

### I.

On March 6, 2003, Defendant BROWNSVILLE INDEPENDENT SCHOOL DISTRICT was served with Plaintiffs' discovery requests in the above case, consisting of Plaintiffs' First Set of Comprehensive Discovery Requests to **Defendant, Noe Sauceda** (Exhibit "A"), Plaintiffs' First Set of Comprehensive Discovery Requests to **Defendant, Eddie Errisuriz** (Exhibit "B"), Plaintiffs'

*Civ Action No. B-02-184*
*Def's Mtn for Protective Order*
*Page 1 of 3*

First Set of Comprehensive Discovery Requests to **Defendant, Randy Dunn** (Exhibit "C"); and

Plaintiffs' Fourth Set of Requests for Production to BISD (Exhibit D).

II.

By way of background, on February 14, 2003, Plaintiffs filed a letter brief in response to the

Court's request for information regarding the status of claims against the above-named individuals

in this federal lawsuit. (*See* Plaintiffs' Letter Brief). The Brownsville Independent School District

timely filed its response thereto. (*See* School District's Response Brief). The School District now

seeks protection from Plaintiffs' First Set of Comprehensive Discovery Requests as to the

Individuals  attached as Exhibits "A", "B" and  "C" for the following reasons:  (1) until the Court

rules on the parties' respective Briefs, Noe Sauceda, Eddie Errisuriz and Randy Dunn, are non-

parties in this case; and (2), consequently, the discovery requests sent to Noe Sauceda, Eddie

Errisuriz and Randy Dunn contain interrogatories and requests for admission, which are not proper

discovery requests to non-parties under Rules 33 and 36 of the Federal Rules of Civil Procedure.

In the interest of judicial economy, and in order to avoid confusion and unfair prejudice to the

Defendant Brownsville Independent School District, the School District requests that the Court issue

an Order protecting Non-Parties, Sauceda, Errisuriz and Dunn from responding to Plaintiffs

Interrogatories, Requests for Admissions and Production and staying any deadlines for ultimately

responding to these requests until the Court has had an opportunity to determine whether these

individuals are parties to the current lawsuit and, consequently, obligated under the Federal Rules

of Civil Procedure to respond thereto.        WHEREFORE PREMISES CONSIDERED, Defendant

Brownsville Independent School District requests that its Motion for Protective Order be granted,

and that it be allowed all such other and further relief to which it shows itself justly entitled.

Respectfully submitted,

WALSH, ANDERSON, BROWN,
  SCHULZE & ALDRIDGE, P.C.
100 NE Loop 410, Suite 1000
San Antonio, Texas  78216
TEL NO. (210) 979-6633
FAX NO. (210) 979-7024

By: _____

JOE A. DE LOS SANTOS,
Attorney-in-Charge
State Bar No. 24007100
Admission No. 24370

DANIEL M. "MATT" BURNS
State Bar No. 03443900

ATTORNEYS FOR DEFENDANT
BROWNSVILLE INDEPENDENT SCHOOL
DISTRICT

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing Defendant Brownsville Independent School District's Motion for Protective Order has been sent by certified mail, return receipt requested, on the ___9___ day of March, 2003, to:

Michael Pruneda                    **Certified Mail, Return Receipt Requested**
The Pruneda Law Firm, P.L.L.C      **No. 7001 0360 0003 2630 3769**
P.O. Box T                         **And Via Telecopy**
Pharr, Texas 78577

_____

JOE A. DE LOS SANTOS

*Civ Action No. B-02-184*
*Def's Mtn for Protective Order*
*Page 3 of 3*

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

NORMA ORTIZ and CATALINA GARCIA    ♦
                                   ♦
V.                                 ♦
                                   ♦
                                   ♦       CIVIL ACTION B-02-184
                                   ♦
BROWNSVILLE INDEPENDENT SCHOOL     ♦       (JURY REQUESTED)
DISTRICT, RANDY DUNN, NOE SAUCEDA  ♦
and EDDIE ERRISURIZ, in their official and ♦
individual capacity, *and employees, agents, and all* ♦
*those acting in concert or at their discretion* ♦

**PLAINTIFFS' FIRST SET OF COMPREHENSIVE DISCOVERY REQUESTS
TO DEFENDANT NOE SAUCEDA**

TO:    Defendant by and through his attorneys of record:

       *Via Fax (210) 979-7024*

       Joe A. De Los Santos
       WALSH, ANDERSON, BROWN, SCHULZE & ALDRIDGE
       100 NE Loop 410, Suite 1000
       San Antonio, Texas 78216

       Pursuant to the provisions of the Federal Rules of Civil Procedure, the undersigned party

propounds the following interrogatories, requests for admissions, and requests for production. These

requests are now being served as noted above and they should be answered in accordance with

Federal Rules of Civil Procedure within thirty (30) days of the date you received them.

       In responding to the following discovery requests, furnish all information and items available

to you, including information or items in the possession of your attorneys, or their investigators, and

all persons acting in your behalf and not merely such information known of your own personal

knowledge. If you cannot answer a question or respond to a request in full after exercising due

diligence to secure the information or item requested, so state in your answer or response, and to the

extent possible, answer or respond stating whatever information or knowledge you have.

       The requests that follow are to be considered as continuing. You are requested to provide,

by way of supplemental answers hereto, additional information as you or any other person acting on



# EXHIBIT A

your behalf may hereafter obtain it, which will augment or otherwise modify your answers given to the requests below. Such supplemental responses are to be filed and served upon this party immediately upon receipt of such information.

## INSTRUCTIONS

A. <u>Interrogatories, Production, and Admissions</u>

Answer the attached Interrogatories separately and accurately in writing and under oath. You must deliver an original, sworn and executed response to these Interrogatories to opposing attorney within thirty (30) days after service of the Interrogatories. If these discovery requests were served on you before you filed an answer in this lawsuit then you need not respond until fifty (50) days after service of the discovery requests. Answer each discovery request separately and in accordance with the Federal Rules of Civil Procedure.

B. <u>Additional Instructions</u>

If any or all documents identified or requested herein are no longer in existence or no longer in your possession, custody, or control because of destruction, transfer, loss, or any other reason, then identify each and every such document.

C. <u>Instructions regarding any alleged ambiguity</u>

To avoid ambiguity, significant effort has been spent to define a number of terms used in the following discovery requests. If you or your attorney claim you do not understand the meaning of a term, please refer to the list of definitions or contact the opposing attorney for clarification.

## DEFINITIONS

As used herein, the following terms shall have the meaning indicated below:

1. "Advertisements" mean any type or form of promotion, publicity, etc., including, but not limited to, radio, television, film, video, newspaper, Internet, E-mail, circulars, coupons, catalogs, electronic bulletin boards, signs, listings with services, listings in job fairs or job banks, products inserts, catalog inserts, Yellow Pages or other directories, fliers, print ads, promotional literature, billboards, posters, and brochures.

2. "Back-Up Tapes" means magnetic tape storage or archiving "Electronic Information" originally contained on a "Computer System".

3. "Benefits" or "fringe benefits" shall mean anything of value received, including but not limited to, life insurance policies or plans, health insurance I policies or plans, dental insurance policies or plans, disability insurance policies or plans, paid vacation, paid sick days, paid personal days, severance payments or packages, tuition reimbursement payments or plans, company picnics or parties, company retreats, company award programs at resorts that are paid for by the company, below market interest loans, credit union membership,

motor vehicles provided, car allowances, annuities, pension payments or plans, matching 401(k) or other type of pension or retirement payments, borrowing privileges against a 401(k) or other pension funds, employee awards or rewards programs, cafeteria plan benefits, programs that permit an employee to receive pay in a manner in which the employee gets tax benefits if the employee uses the income t pay for day care, deductibles on insurance payments, etc., vision payments or plans, country club memberships, club memberships, use of company owned tickets to sporting, musical, or other entertainment events, use of country clubs or other clubs of which the employer is a member, or any other type of perks or perquisites.

4.    "Communication" mean any oral or written utterance, notation, or statement of any nature whatsoever, by and to whomsoever made including, but not limited to, correspondence, conversations, dialogues, discussions, interviews, consultations, agreements, and other understandings or among two or more persons.

5.    "Computer or Computer Equipment" means all data processing equipment, including but not limited to, central processing units, tape drives, drum and disk storage devices, control units, input devices, and outpatient devices; all unit record equipment, including but not limited to, accumulators, calculators, and sorters; all record storage and retrieval equipment, including but not limited to, microfilm storage and retrieval apparatus, and audio/visual storage and retrieval apparatus.

6.    "Computer Application" means a program that performs a specific task or function including, e-mail messaging, word processing, or spreadsheets.

7.    The term "computer data" means any documents, information or data ever placed into or stored on any of your computers, including, but not limited to, the hard drive, laptops, disks, storage systems, retrieval systems and similar systems, E-mails, Internet transmissions, electronic bulletin boards, websites, diary systems, calendar systems, tickler systems and any other programs.

8.    "Computer or Electronic information or data or database" means all written or numerical information or data that is inputted, processed, or contained in the "Computer System" for any purpose.

9.    "Computer Log" means "Computer Systems" usage records such as a listing of electronically stores information, and may include title, subject matter, or first line of the document information and the date of the document.

10.    "Computer Program" means a set of instructions or steps, usually in symbolic form, that generates machine instruction and tells the computer how to handle a problem or sort information.

11.    "Computer System" means an assembly of computer operations and procedures, persons, equipment, and hardware and software, united by some form of regulated interaction to form an organized whole.

12. "Computer System Media" means the type of material used for storage of electronic information and includes floppy disks, hard dries, and magnetic tapes.

13. The term "contractual indemnity agreements" means any agreement whereby any person or business firm may be liable to pay a sum of money upon the happening of a particular event or contingency or upon the occurrence of a loss, judgment, peril, or risk.

14. "Cost benefit" means any study, analysis or activity, by whatever name called, which has as its purpose, or serves the purpose of, assisting in the determination of the relative cost of any action or inaction considered by the Defendant and the estimated economic benefit of all alternatives, actions, or inactions considered.

15. "Defendant" means NOE SAUCEDA

16. "Defendant's Computer System" means any and all "Computer Equipment" or "Computer Systems" located at the defendant's premises or accessible for use by defendant.

17. The term "documents" is used in the broadcast sense of that term and includes, in addition to the definition of documents pursuant to the Federal Rules of Civil Procedure, the original and all non-identical copies, whether different from the original by reason of notation made on such copies or otherwise, and all drafts of letters, telegrams, memoranda, reports of telephone conversations, ledgers, time cards, time logs, work logs, hourly logs, journals, personnel files, invoices, bills, sales orders, call reports, e-mails, financial and business records, receipts, contracts, reports, studies, calendar entries, diary entries, maps, pamphlets, notes, charts, forms, tabulations, analyses, statistical or informational accumulations, summaries or abstracts, any kind of records of meetings or conversations, firm impressions, sound or mechanical reproductions, rules, regulations, opinions, orders, interpretations, exceptions, position papers, guidelines, agency documents, publications, instructions, transparencies, handbooks, manuals, operating procedures, appointment calendars, call slips, file jackets, course materials, training materials, minutes, photographs, videotapes, cassette tapes, films, press releases, speeches, affidavits, witness statements, surveys, graphs, statistics, tables, printed or type written forms, indices, agreements, canceled checks, correspondence, memos, data on computer, storage, data on computer disks, data stored on computer backup, telephone message slips, sketches, notes of conversations, and all other written, printed, typed, or other reported matter (including electronic or magnetic recordings), photographs, or other data compilations in which information can be obtained, which are in the possession, custody, or control of you, your attorneys, agents, physicians, directors, officers, partners, affiliates, subsidiaries, servants, or employees.

18. "EEO assurance" means any and all efforts, including, but not limited to, record keeping, studies, tests, inspections, audits, and examinations, and other activities conducted by or on behalf of you for the purpose of ascertaining whether or not your company provides its employees equal employment opportunities and an environment free of discrimination and harassment.

19. "EEO" means equal employment opportunity.

20. "EEOC" means the Equal Employment Opportunity Commission.

21. "E-Mail means an electronic messaging application that provides for the receipt and sending of messages among users of a computer system and possibly to and from remote users.

22.     "Governmental entity" means any governmental organization including, but not limited to, any international, federal, state, regional, county, parish, city (whether incorporated, unincorporated, or home rule) elective body, appointed body, legislative body, board, commission, agency, department, division, subdivision, and any other department or division of any of the previously listed entities.

23.     "Identify" or "name" means to provide the complete identity, to the extent known or ascertainable by you or your attorneys, agents, directors, officers, employees, partners, subsidiaries and affiliates, and includes, without limitation, a request for the following information:

(a)     Where the term to be identified is a person, the person's full name, present or last known address and telephone number, and present or last known employer;

(b)     Where the term to be identified is a document, its character or title, the date it was created, and the author or signatory;

(c)     Where the item to be identified is a statement, the exact language or nature of the statement and the person who made the statement; and

(d)     Where the information to be identified is a lawsuit, the name of the lawsuit and the court where it was filed.

24.     The "incident" means the facts and circumstances concerning the subject of this lawsuit.

25.     "Income" shall mean any type of remuneration including, but not limited to, wages, pay, commissions income listed on a W-2, bonuses, emoluments, and remittances.

26.     "Industry group" and "industry groups" mean any association, company, corporation, or trade group that includes in its membership individuals, companies, corporations, safety organizations, or employment organizations. Examples of such industry groups include, but are not limited to, the Better Business Bureau, Society for Human Resource Management, Advocacy, Inc., National Organization of Women, Equal Employment Advisory Council, National Chamber of Commerce, Institute for Injury Reduction, Job Accommodation Network, NEMA, National Employee Rights Institute, National Employment Law Product, 9 to 5/National Association of Working Women, Government Accountability Project, Taxpayers Against Fraud, National Safety Council, International Occupational Safety & Health Information Center, National Institute for Occupational Safety & Health, and The British Standards Institute.

27.     "Insurance carriers" means any and all insurance carriers, whether primary, excess or a reinsurer.

28.     "Insurance policy" means any type of agreement or insurance policy under which any person or organization may be liable to pay all or part of any judgment which may be entered in this lawsuit, or to indemnify or reimburse for the costs or attorneys' fees incurred in being a party to this lawsuit, or to indemnify or reimburse for payments made to satisfy any judgment entered in this lawsuit. "Insurance policy" includes all types of insurance policies, including but not limited to, comprehensive director and officer, errors and omissions, general liability, bonds, workers' compensation, limited liability, automobile,

boiler and machinery, nuclear, fidelity, personal injury, property care, custody and control, contractual liability insurance, commercial blanket bond coverage, builder's risk, employment practices liability, all risk, excess and umbrella. Further, "insurance policy" means and includes, but is not limited to, all insurance policies and attachments thereto, and other similar documents pertaining to the insurance policy, including, but not limited to, declaration pages, certificates of insurance, exclusions, endorsements, amendments, riders, and binders.

29. The "last ten years to the present" means ten years preceding, the service of this discovery through the present. Pursuant to the supplementation requirement under the Rules of Procedure, you are hereby requested to update your answers regarding all complaints, lawsuits, settlements, information, documents, etc., that arise or are created or come to your attention during the pendency of this lawsuit.

30. "Medical facility" means any place where a person receives any medical or mental health assistance, treatment, advice, care, or counseling for any illnesses, conditions, or problems. This includes first aid stations, Medi-stop, nurses stations, clinics, hospitals, emergency rooms, treatment centers, church counseling, non-profit counseling, doctors' offices, etc.

31. "Medical professional" or "person(s) practicing the medical or healing arts" means anyone providing assistance to you for health, medical, or mental problems. This includes, but is not limited to, doctors, counselors, psychiatrists, psychologists, pastors, ministers, priests, faith healers, shamans, medicine men, rabbis, nurses, midwives, therapists, acupuncture practitioners, specialists in holistic medicine or alternative healing methods.

32. "Operating System" means an organized collection of programs for operating a computer, usually part of a software package defined to simplify housekeeping such as input/output procedures, sort merge generators, and so on.

33. "Opposing attorney" means the attorney who represents the defendant upon whom these discovery requests were served.

34. "Or" and "and" mean and/or.

35. "Person" or "persons" means not only natural persons, but also corporations, partnerships, organizations, associations, industry groups, entities, joint venturers, or any government or governmental entity, commission, or agency and any divisions or departments or other units of any of the entities defined herein.

36. "Photographs," "photos," "videos," and "videotapes" mean all films, negatives, slides, photos, digital images, visual images stored on computers, Polaroid, movie pictures, videotapes, movies, and pictures, whether developed or not.

37. "Plaintiffs" means NORMA ORTIZ and CATALINA GARCIA

38. "Purge" means to periodically or randomly delete or take off of the "Computer System E-Mail" messages and transfer this information to "Back-Up Tapes" to restore or make usable computer memory.

39. "User" means a person who has access to a computer or in any manner uses or directs another to use any information stored in or generated by a computer.

40.    The "Rules of Civil Procedure" means the Federal Rules of Civil Procedure.

41.    "Study" and "Studies" mean any study made by or on behalf of the Defendant or a study made by some other person, firm or corporation to which the Defendant referred in deciding on a course of action including, but not limited to, firing, promoting or demoting employees, downsizing or reorganization, elimination, combination, sale or purchase of departments, divisions, subsidiaries or other companies. The word "study" includes marketing analysis, predictive analysis, tests, quality assurance analysis, documentation of, summaries, or analysis of options, courses of action, costs, and benefits.

42.    "TCHR" means the Texas Commission on Human Rights.

43.    "Tests" mean any tests given or made by, or on behalf of, the Defendant or testes made by some other person, firm, or corporation that Defendant used. The word "tests" includes written and oral tests, skills tests, and static and dynamic tests.

44.    "This lawsuit" means the lawsuit identified in the style on the first page of this collection of documents.

45.    "Through the time of trial" shall mean from the number of years specified prior to the date this discovery was propounded through the time the parties in this lawsuit begin conducting voir dire.

46.    "Trade secret" or "trade secrets" means any confidential data, lists, compilations, systems, material or information relating to any aspect of defendant's business or operations including, but not limited to, any secret or confidential information relating to the business, customers, trade or industrial practices, policies, procedures, guidelines, forms, checklists, blueprints, trade secrets, technologies, recipes, systems, methods, confidential proprietary business methods, "know how" and similar information.

47.    "TWCC" means the Texas Workers' Compensation Commission.

48.    "TWC" means the Texas Workforce Commission.

49.    "Voice Mail" means magnetic, digital, or electronic telephonic message storage or archiving of messages originally contained on a telephone system, answering machine, or from an independent telephone service company.

50.    "You," "your," "yours," and "yourself," mean the defendant upon whom these discovery requests were served.

51.    "Your associates" means your agents, servants, partners, limited partners, subsidiaries, affiliates, principals, privies, directors, officers, joint venturers, or representatives.

52.    "Your attorneys" means the attorneys hired to represent you in or consult with you about this lawsuit or any previous labor and employment law matter.

53.    "Your employees" means any person employed by you who completed a W-2, whether employed full-time, part-time or temporarily. The term "your employees" shall also include

anyone who worked for you that was a borrowed employee or provided by a temporary employment agency or company.

54.    "Your joint venturers" means all of your divisions, subsidiaries, parent corporations, joint venturers partners, and affiliated corporations with whom you are joint venturers or partners, or share employees, directors, stock ownership or interlocking directorships.

55.    The singular shall include the plural and the plural the singular, whenever the effect of doing so is to increase the information responsive to the request for information.

Respectfully submitted,

THE PRUNEDA LAW FIRM, P.L.L.C.

P.O. Box T
Pharr, Texas 78577
Tel: (956) 702-9675
Fax: (956) 702-9659

By:    _____

MICHAEL PRUNEDA
State Bar No. 24025601
Fed. I.D. No. 25659

ATTORNEY FOR PLAINTIFFS

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing document has been forwarded to opposing counsel of record as noted below:

Signed on this the _6__ day of _March_, 2003:

*Via Fax (210) 979-7024*

Joe A. De Los Santos
WALSH, ANDERSON, BROWN, SCHULZE & ALDRIDGE
100 NE Loop 410, Suite 1000
San Antonio, Texas 78216

_____
Michael Pruneda

## INTERROGATORY NUMBER 1:

Please identify yourself by stating your full legal name, job title, social security number, driver's license number and state of issuance, mailing and physical address, phone numbers, including the name of any person(s) who have assisted you in answering these interrogatories.

## ANSWER:

## INTERROGATORY NUMBER 2:

Please give the following information:

      **(a)**    the name, address, job title, and telephone number of all persons or entities who *took part* in the investigation or consideration of Plaintiffs' employment. Please state whether statements were given;

      **(b)**    the name, address, job title, and telephone number all persons or entities who you *spoke to* with respect to the Plaintiffs' employment. Please state whether statements were given;

      **(c)**    the name, address, job title, and telephone number of all persons or entities who you *consulted* with respect to the Plaintiffs' employment . Please state whether statements were given;

      **(d)**    identify and describe what *discussions and conversations* you had with employees, supervisors, administrative officials, and public/ elected officials concerning Plaintiffs' employment, and any employment decisions relating to your employment. Please state whether statements were given; and

      **(e)**    if an internal investigation was made by you, your staff, other employees, or Brownsville I.S.D. of Plaintiffs', state what conclusion was reached as a result of that investigation.

## ANSWER:

## INTERROGATORY NUMBER 3:

Identify every legal proceeding in which you have been or are now involved. This question is to be interpreted to include involvement in current and past criminal and civil matters in which you have been a Plaintiff or a Defendant.

## ANSWER:

## INTERROGATORY NUMBER 4:

Please describe with specificity and detail your complete educational history and background, including any diplomas, degrees, and certifications you received and the date in which you received them, and the name, address, telephone number, and dates of attendance of any educational institutions you attended.

**ANSWER:**

**INTERROGATORY NUMBER 5:**

Please describe with specificity and detail your complete employment history and background, including the name, address, and telephone number of your employer, the dates of employment, the reason your employment ended, your rates of pay from each, your job title and duties, and your immediate supervisors for each.

**ANSWER:**

**REQUEST FOR ADMISSION NO. 1:**

Admit that you were employed with Brownsville I.S.D.

RESPONSE:

**REQUEST FOR ADMISSION NO. 2:**

Admit that you are currently employed with Brownsville I.S.D.

RESPONSE:

**REQUEST FOR ADMISSION NO. 3:**

Admit that you were employed with Brownsville I.S.D. as Superintendent.

RESPONSE:

**REQUEST FOR ADMISSION NO. 4:**

Admit that while employed with Brownsville I.S.D. as Superintendent you supervised the district's personnel.

RESPONSE:

**REQUEST FOR ADMISSION NO. 5:**

Admit that while employed with Brownsville I.S.D. as Superintendent you supervised Plaintiff Norma Ortiz.

RESPONSE:

**REQUEST FOR ADMISSION NO. 6:**

Admit that while employed with Brownsville I.S.D. as Superintendent you supervised the administrative staff.

RESPONSE:

**REQUEST FOR ADMISSION NO. 7:**

Admit that while employed with Brownsville I.S.D. as Superintendent you supervised Deborah Dunn.

RESPONSE:

**REQUEST FOR ADMISSION NO. 8:**

Admit that while employed with Brownsville I.S.D. as Superintendent you supervised Drue Brown.

RESPONSE:

**REQUEST FOR ADMISSION NO. 9:**

Admit that while employed with Brownsville I.S.D. as Superintendent you supervised Eddie Errisuriz.

RESPONSE:

**REQUEST FOR ADMISSION NO. 10:**

Admit that while employed with Brownsville I.S.D. as Superintendent you were responsible for the hiring, firing, and policies related to the terms and conditions of employment for district personnel.

RESPONSE:

**REQUEST FOR ADMISSION NO. 11:**

Admit that while employed with Brownsville I.S.D. as Superintendent you discussed Plaintiff Catalina Garcia's employment with School Board member Randy Dunn.

RESPONSE:

**REQUEST FOR ADMISSION NO. 12:**

Admit that while employed with Brownsville I.S.D. as Superintendent you discussed Plaintiff Catalina Garcia's employment with Eddie Errisuriz.

RESPONSE:

**REQUEST FOR ADMISSION NO. 13:**

Admit that while employed with Brownsville I.S.D. as Superintendent you discussed Plaintiff Catalina Garcia employment with Hector Gonzalez.

RESPONSE:

**REQUEST FOR ADMISSION NO. 14:**

Admit that while employed with Brownsville I.S.D. as Superintendent you discussed Plaintiff Catalina Garcia employment with Johnny Piñeda.

RESPONSE:

**REQUEST FOR ADMISSION NO. 15:**

Admit that while employed with Brownsville I.S.D. as Superintendent you discussed Plaintiff Norma Ortiz in a closed session meeting with the School Board on October 30, 2001.

RESPONSE:

**REQUEST FOR ADMISSION NO. 16:**

Admit that while employed with Brownsville I.S.D. as Superintendent you discussed Plaintiff Norma Ortiz in a closed session meeting with the School Board when such discussion was not a topic of discussion on the posted meeting notice.

RESPONSE:

**REQUEST FOR ADMISSION NO. 17:**

Admit that while employed with Brownsville I.S.D. as Superintendent you changed Plaintiff Norma Ortiz's job duties.

RESPONSE:

**REQUEST FOR ADMISSION NO. 18:**

Admit that while employed with Brownsville I.S.D. as Superintendent many of Plaintiff Norma Ortiz's job duties were given to Deborah Dunn.

RESPONSE:

**REQUEST FOR ADMISSION NO. 19:**

Admit that while employed with Brownsville I.S.D. as Superintendent many of Plaintiff Norma Ortiz's job duties were given to Deborah Dunn who was married to Randy Dunn at the time.

RESPONSE:

**REQUEST FOR ADMISSION NO. 20:**

Admit that while employed with Brownsville I.S.D. as Superintendent you discussed Plaintiff Catalina Garcia's employment with her in your office.

RESPONSE:

**REQUEST FOR ADMISSION NO. 21:**

Admit that while employed with Brownsville I.S.D. as Superintendent you did not hire Plaintiff Catalina Garcia for employment with Brownsville I.S.D.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 22:**

Admit that while employed with Brownsville I.S.D. as Superintendent you did not hire Plaintiff Catalina Garcia for employment with Brownsville I.S.D because of her political candidacy.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 23:**

Admit that while employed with Brownsville I.S.D. as Superintendent you did not hire Plaintiff Catalina Garcia for employment with Brownsville I.S.D because of her political associations.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 24:**

Admit that while employed with Brownsville I.S.D. as Superintendent you did not allow Plaintiff Norma Ortiz to continue as School Board Secretary with Brownsville I.S.D because of her political associations.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 25:**

Admit that while employed with Brownsville I.S.D. as Superintendent not hiring Plaintiff Catalina Garcia for employment with Brownsville I.S.D because of her political candidacy and political associations violated her constitutional rights.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 26:**

Admit that while employed with Brownsville I.S.D. as Superintendent allowing Plaintiff Norma Ortiz to continue as School Board Secretary with Brownsville I.S.D because of her political associations violated her constitutional rights.

**RESPONSE:**

**INTERROGATORY NUMBER 6:**

If you deny either the factual or legal claims brought by Plaintiffs, state all reasons why you deny each separately.

**ANSWER:**

## INTERROGATORY NUMBER 7:

Please identify with specificity any and all statements, documents, evidence, and all facts that support your claims or affirmative defenses in this case.

## ANSWER:

## INTERROGATORY NUMBER 8:

Please identify any and all persons who you expect to call to testify at trial.

## ANSWER:

## INTERROGATORY NO. 9:

If you denied any of the requests for admission preceding, describe with specificity and detail the facts and evidence that would justify your denial for each separately.

## ANSWER:

## REQUESTS FOR PRODUCTION

1.   Please produce any and all charts, graphs, maps, physical models, or other graphic representations and documents which you plan to utilize as demonstrative exhibits at the time of trial or introduce into evidence at the time of trial.

RESPONSE:

2.   Please produce all documents and tangible things showing or supporting the facts and opinions to which any expert is expected to testify in this case, the grounds of the expert's opinions and the expert's conclusions.  This request specifically includes (as to each such expert), but is not limited to, copies of all notes made by the expert, all notes made by others contained in such expert's file, all raw data furnished the expert, all data and calculation sheets made by the expert, copies of computer programs utilized by the expert, all reports prepared by the expert, and any exhibits prepared by or intended to be used by the expert in presenting the expert's opinions and conclusions in this case.

RESPONSE:

3.   Please produce all documents and other tangible things furnished to any of the experts who may testify on behalf of you in the lawsuit or whose opinions or impressions have been reviewed by any expert who may testify in the lawsuit.

RESPONSE:

4.   Please produce copies of all documents, articles or test materials out of professional journals, publications, books, treatises, or other professional writings, periodicals or pamphlets which have been reviewed by or will be utilized by your experts in connection with the lawsuit.

RESPONSE:

5.   Please produce all documents and other tangible things furnished to or prepared by any consulting expert whose opinions and/or impressions have been reviewed by an expert who you expect to call as an expert witness at the time of trial.

RESPONSE:

6.   Please produce all written or recorded statements or admissions made by any public/ elected official, director, employee, agent, or representative of Defendant Brownsville I.S.D. or Plaintiffs which in any way relate to the alleged claims or causes of action identified in Plaintiffs' lawsuit.

RESPONSE:

7.    Please produce all documents which constitute, or which embody, reference, list, record, or in any way mention, a communication between any agent or representative of Plaintiffs and any employee, agent or representative of Defendant Brownsville I.S.D.

RESPONSE:

8.    Please produce all documents which evidence, manifest, or relate to your net worth.

RESPONSE:

9.    Please produce for inspection and copying any and all documents that would evidence, manifest, refer to, or relate to the payment of any legal fees or court costs associated with or arising out of the litigation in this case, including without limitation, any invoices or statements received, any correspondence transmitting payment of any legal fees or court costs, any checks, drafts, money orders, or negotiable instruments tendered by you in payment of any legal fees or court costs, and any receipts, correspondence, or monthly statements acknowledging such payments.

RESPONSE:

10.    Please produce for inspection and copying any and all I.R.S. form W-2's or any other documents reflecting employment compensation received during the period January 1, 1998 through the present.

RESPONSE:

11.    Please produce for inspection and copying any and all I.R.S. form 1099's and documents reflecting any non-employment compensation received during the period January 1, 1998 through the present.

RESPONSE:

12.    Please produce for inspection and copying any and all checks, money orders, receipts or other documents that would reflect any wages, salary, or other compensation you received on or after January 31, 1998.

RESPONSE:

13.    Please produce for inspection and copying your U.S. federal Income Tax Return for the years during the period January 1, 1998 through the present.

RESPONSE:

14.   Please produce for inspection and copying any documents and resumes you have submitted to any prospective employer during the period January 1, 1995 through the present.

RESPONSE:

15.   Please produce for inspection and copying any and all documents which would reflect, manifest, or evidence your efforts to secure employment on or after January 1, 1995, including without limitation, the following:

   (a)   any applications for employment;

   (b)   any correspondence transmitting any applications for employment or resumes to any prospective employers;

   (c)   any newspaper advertisements or other written solicitations for employees to which you responded; and

   (d)   any diaries, notes, or other written records of your attempts (if any) to secure employment.

RESPONSE:

16.   Please produce your job description(s) and any documents which would reflect your job duties while employed with Brownville I.S.D. and your current employment.

RESPONSE:

17.   Please produce the attached employment authorization after you have signed it.

RESPONSE:

18.   Please produce any and all documents that would evidence or show any complaints, grievances, or disputes between you and Brownsville I.S.D. or any Brownsville I.S.D. representative, official, or other agent.

RESPONSE:

## AUTHORIZATION FOR RELEASE
## OF EMPLOYMENT RECORDS

Re:   Name:    _____      Soc. Sec. #:   _____

       Address:   _____      D.O.B.:    _____

                 _____

**TO WHOM IT MAY CONCERN:**

      I, _____, hereby authorize, from the period of January 1, 1995 to the present, any employers, corporation or company to furnish THE PRUNEDA LAW FIRM, P.L.L.C. complete photocopies or other reproductions which it may request relative to any and all application(s), employment record(s), personnel file(s), payroll record(s), job title(s), work evaluation(s), and any other information, of every kind and description, which it may request relative to my past and present employment.

      It is my desire that you maintain the confidence of the confidentiality of any information you are in possession of that relates to me. Therefore, please do not release any information relating to me to anyone other than the above named attorney or law firm.


                 _____

                 **NOE SAUCEDA**

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

NORMA ORTIZ and CATALINA GARCIA     ♦

V.     ♦

    ♦

    ♦

    ♦     CIVIL ACTION B-02-184

BROWNSVILLE INDEPENDENT SCHOOL     ♦

DISTRICT, RANDY DUNN, NOE SAUCEDA     ♦     (JURY REQUESTED)

and EDDIE ERRISURIZ, in their official and     ♦

individual capacity, *and employees, agents, and all*     ♦

*those acting in concert or at their discretion*     ♦

**PLAINTIFFS' FIRST SET OF COMPREHENSIVE DISCOVERY REQUESTS
TO DEFENDANT EDDIE ERRISURIZ**

TO:     Defendant by and through his attorneys of record:

*Via Fax (210) 979-7024*

Joe A. De Los Santos
WALSH, ANDERSON, BROWN, SCHULZE & ALDRIDGE
100 NE Loop 410, Suite 1000
San Antonio, Texas 78216

Pursuant to the provisions of the Federal Rules of Civil Procedure, the undersigned party propounds the following interrogatories, requests for admissions, and requests for production. These requests are now being served as noted above and they should be answered in accordance with Federal Rules of Civil Procedure within thirty (30) days of the date you received them.

In responding to the following discovery requests, furnish all information and items available to you, including information or items in the possession of your attorneys, or their investigators, and all persons acting in your behalf and not merely such information known of your own personal knowledge. If you cannot answer a question or respond to a request in full after exercising due diligence to secure the information or item requested, so state in your answer or response, and to the extent possible, answer or respond stating whatever information or knowledge you have.

The requests that follow are to be considered as continuing. You are requested to provide, by way of supplemental answers hereto, additional information as you or any other person acting on

**EXHIBIT** 

your behalf may hereafter obtain it, which will augment or otherwise modify your answers given to the requests below. Such supplemental responses are to be filed and served upon this party immediately upon receipt of such information.

## INSTRUCTIONS

**A.**    Interrogatories, Production, and Admissions

Answer the attached Interrogatories separately and accurately in writing and under oath. You must deliver an original, sworn and executed response to these Interrogatories to opposing attorney within thirty (30) days after service of the Interrogatories. If these discovery requests were served on you before you filed an answer in this lawsuit then you need not respond until fifty (50) days after service of the discovery requests. Answer each discovery request separately and in accordance with the Federal Rules of Civil Procedure.

**B.**    Additional Instructions

If any or all documents identified or requested herein are no longer in existence or no longer in your possession, custody, or control because of destruction, transfer, loss, or any other reason, then identify each and every such document.

**C.**    Instructions regarding any alleged ambiguity

To avoid ambiguity, significant effort has been spent to define a number of terms used in the following discovery requests. If you or your attorney claim you do not understand the meaning of a term, please refer to the list of definitions or contact the opposing attorney for clarification.

## DEFINITIONS

As used herein, the following terms shall have the meaning indicated below:

1.    "Advertisements" mean any type or form of promotion, publicity, etc., including, but not limited to, radio, television, film, video, newspaper, Internet, E-mail, circulars, coupons, catalogs, electronic bulletin boards, signs, listings with services, listings in job fairs or job banks, products inserts, catalog inserts, Yellow Pages or other directories, fliers, print ads, promotional literature, billboards, posters, and brochures.

2.    "Back-Up Tapes" means magnetic tape storage or archiving "Electronic Information" originally contained on a "Computer System".

3.    "Benefits" or "fringe benefits" shall mean anything of value received, including but not limited to, life insurance policies or plans, health insurance I policies or plans, dental insurance policies or plans, disability insurance policies or plans, paid vacation, paid sick days, paid personal days, severance payments or packages, tuition reimbursement payments or plans, company picnics or parties, company retreats, company award programs at resorts that are paid for by the company, below market interest loans, credit union membership,

motor vehicles provided, car allowances, annuities, pension payments or plans, matching 401(k) or other type of pension or retirement payments, borrowing privileges against a 401(k) or other pension funds, employee awards or rewards programs, cafeteria plan benefits, programs that permit an employee to receive pay in a manner in which the employee gets tax benefits if the employee uses the income t pay for day care, deductibles on insurance payments, etc., vision payments or plans, country club memberships, club memberships, use of company owned tickets to sporting, musical, or other entertainment events, use of country clubs or other clubs of which the employer is a member, or any other type of perks or perquisites.

4.      "Communication" mean any oral or written utterance, notation, or statement of any nature whatsoever, by and to whomsoever made including, but not limited to, correspondence, conversations, dialogues, discussions, interviews, consultations, agreements, and other understandings or among two or more persons.

5.      "Computer or Computer Equipment" means all data processing equipment, including but not limited to, central processing units, tape drives, drum and disk storage devices, control units, input devices, and outpatient devices; all unit record equipment, including but not limited to, accumulators, calculators, and sorters; all record storage and retrieval equipment, including but not limited to, microfilm storage and retrieval apparatus, and audio/visual storage and retrieval apparatus.

6.      "Computer Application" means a program that performs a specific task or function including, e-mail messaging, word processing, or spreadsheets.

7.      The term "computer data" means any documents, information or data ever placed into or stored on any of your computers, including, but not limited to, the hard drive, laptops, disks, storage systems, retrieval systems and similar systems, E-mails, Internet transmissions, electronic bulletin boards, websites, diary systems, calendar systems, tickler systems and any other programs.

8.      "Computer or Electronic information or data or database" means all written or numerical information or data that is inputted, processed, or contained in the "Computer System" for any purpose.

9.      "Computer Log" means "Computer Systems" usage records such as a listing of electronically stores information, and may include title, subject matter, or first line of the document information and the date of the document.

10.     "Computer Program" means a set of instructions or steps, usually in symbolic form, that generates machine instruction and tells the computer how to handle a problem or sort information.

11.     "Computer System" means an assembly of computer operations and procedures, persons, equipment, and hardware and software, united by some form of regulated interaction to form an organized whole.

12. "Computer System Media" means the type of material used for storage of electronic information and includes floppy disks, hard dries, and magnetic tapes.

13. The term "contractual indemnity agreements" means any agreement whereby any person or business firm may be liable to pay a sum of money upon the happening of a particular event or contingency or upon the occurrence of a loss, judgment, peril, or risk.

14. "Cost benefit" means any study, analysis or activity, by whatever name called, which has as its purpose, or serves the purpose of, assisting in the determination of the relative cost of any action or inaction considered by the Defendant and the estimated economic benefit of all alternatives, actions, or inactions considered.

15. "Defendant" means EDDIE ERRISURIZ

16. "Defendant's Computer System" means any and all "Computer Equipment" or "Computer Systems" located at the defendant's premises or accessible for use by defendant.

17. The term "documents" is used in the broadcast sense of that term and includes, in addition to the definition of documents pursuant to the Federal Rules of Civil Procedure, the original and all non-identical copies, whether different from the original by reason of notation made on such copies or otherwise, and all drafts of letters, telegrams, memoranda, reports of telephone conversations, ledgers, time cards, time logs, work logs, hourly logs, journals, personnel files, invoices, bills, sales orders, call reports, e-mails, financial and business records, receipts, contracts, reports, studies, calendar entries, diary entries, maps, pamphlets, notes, charts, forms, tabulations, analyses, statistical or informational accumulations, summaries or abstracts, any kind of records of meetings or conversations, firm impressions, sound or mechanical reproductions, rules, regulations, opinions, orders, interpretations, exceptions, position papers, guidelines, agency documents, publications, instructions, transparencies, handbooks, manuals, operating procedures, appointment calendars, call slips, file jackets, course materials, training materials, minutes, photographs, videotapes, cassette tapes, films, press releases, speeches, affidavits, witness statements, surveys, graphs, statistics, tables, printed or type written forms, indices, agreements, canceled checks, correspondence, memos, data on computer, storage, data on computer disks, data stored on computer backup, telephone message slips, sketches, notes of conversations, and all other written, printed, typed, or other reported matter (including electronic or magnetic recordings), photographs, or other data compilations in which information can be obtained, which are in the possession, custody, or control of you, your attorneys, agents, physicians, directors, officers, partners, affiliates, subsidiaries, servants, or employees.

18. "EEO assurance" means any and all efforts, including, but not limited to, record keeping, studies, tests, inspections, audits, and examinations, and other activities conducted by or on behalf of you for the purpose of ascertaining whether or not your company provides its employees equal employment opportunities and an environment free of discrimination and harassment.

19. "EEO" means equal employment opportunity.

20. "EEOC" means the Equal Employment Opportunity Commission.

21. "E-Mail means an electronic messaging application that provides for the receipt and sending of messages among users of a computer system and possibly to and from remote users.

22.   "Governmental entity" means any governmental organization including, but not limited to, any international, federal, state, regional, county, parish, city (whether incorporated, unincorporated, or home rule) elective body, appointed body, legislative body, board, commission, agency, department, division, subdivision, and any other department or division of any of the previously listed entities.

23.   "Identify" or "name" means to provide the complete identity, to the extent known or ascertainable by you or your attorneys, agents, directors, officers, employees, partners, subsidiaries and affiliates, and includes, without limitation, a request for the following information:

   (a)   Where the term to be identified is a person, the person's full name, present or last known address and telephone number, and present or last known employer;

   (b)   Where the term to be identified is a document, its character or title, the date it was created, and the author or signatory;

   (c)   Where the item to be identified is a statement, the exact language or nature of the statement and the person who made the statement; and

   (d)   Where the information to be identified is a lawsuit, the name of the lawsuit and the court where it was filed.

24.   The "incident" means the facts and circumstances concerning the subject of this lawsuit.

25.   "Income" shall mean any type of remuneration including, but not limited to, wages, pay, commissions income listed on a W-2, bonuses, emoluments, and remittances.

26.   "Industry group" and "industry groups" mean any association, company, corporation, or trade group that includes in its membership individuals, companies, corporations, safety organizations, or employment organizations. Examples of such industry groups include, but are not limited to, the Better Business Bureau, Society for Human Resource Management, Advocacy, Inc., National Organization of Women, Equal Employment Advisory Council, National Chamber of Commerce, Institute for Injury Reduction, Job Accommodation Network, NEMA, National Employee Rights Institute, National Employment Law Product, 9 to 5/National Association of Working Women, Government Accountability Project, Taxpayers Against Fraud, National Safety Council, International Occupational Safety & Health Information Center, National Institute for Occupational Safety & Health, and The British Standards Institute.

27.   "Insurance carriers" means any and all insurance carriers, whether primary, excess or a reinsurer.

28.   "Insurance policy" means any type of agreement or insurance policy under which any person or organization may be liable to pay all or part of any judgment which may be entered in this lawsuit, or to indemnify or reimburse for the costs or attorneys' fees incurred in being a party to this lawsuit, or to indemnify or reimburse for payments made to satisfy any judgment entered in this lawsuit. "Insurance policy" includes all types of insurance policies, including but not limited to, comprehensive director and officer, errors and omissions, general liability, bonds, workers' compensation, limited liability, automobile,

boiler and machinery, nuclear, fidelity, personal injury, property care, custody and control, contractual liability insurance, commercial blanket bond coverage, builder's risk, employment practices liability, all risk, excess and umbrella. Further, "insurance policy" means and includes, but is not limited to, all insurance policies and attachments thereto, and other similar documents pertaining to the insurance policy, including, but not limited to, declaration pages, certificates of insurance, exclusions, endorsements, amendments, riders, and binders.

29.   The "last ten years to the present" means ten years preceding, the service of this discovery through the present.   Pursuant to the supplementation requirement under the Rules of Procedure, you are hereby requested to update your answers regarding all complaints, lawsuits, settlements, information, documents, etc., that arise or are created or come to your attention during the pendency of this lawsuit.

30.   "Medical facility" means any place where a person receives any medical or mental health assistance, treatment, advice, care, or counseling for any illnesses, conditions, or problems. This includes first aid stations, Medi-stop, nurses stations, clinics, hospitals, emergency rooms, treatment centers, church counseling, non-profit counseling, doctors' offices, etc.

31.   "Medical professional" or "person(s) practicing the medical or healing arts" means anyone providing assistance to you for health, medical, or mental problems. This includes, but is not limited to, doctors, counselors, psychiatrists, psychologists, pastors, ministers, priests, faith healers, shamans, medicine men, rabbis, nurses, midwives, therapists, acupuncture practitioners, specialists in holistic medicine or alternative healing methods.

32.   "Operating System" means an organized collection of programs for operating a computer, usually part of a software package defined to simplify housekeeping such as input/output procedures, sort merge generators, and so on.

33.   "Opposing attorney" means the attorney who represents the defendant upon whom these discovery requests were served.

34.   "Or" and "and" mean and/or.

35.   "Person" or "persons" means not only natural persons, but also corporations, partnerships, organizations, associations, industry groups, entities, joint venturers, or any government or governmental entity, commission, or agency and any divisions or departments or other units of any of the entities defined herein.

36.   "Photographs," "photos," "videos," and "videotapes" mean all films, negatives, slides, photos, digital images, visual images stored on computers, Polaroid, movie pictures, videotapes, movies, and pictures, whether developed or not.

37.   "Plaintiffs" means NORMA ORTIZ and CATALINA GARCIA

38.   "Purge" means to periodically or randomly delete or take off of the "Computer System E-Mail" messages and transfer this information to "Back-Up Tapes" to restore or make usable computer memory.

39.   "User" means a person who has access to a computer or in any manner uses or directs another to use any information stored in or generated by a computer.

40.    The "Rules of Civil Procedure" means the Federal Rules of Civil Procedure.

41.    "Study" and "Studies" mean any study made by or on behalf of the Defendant or a study made by some other person, firm or corporation to which the Defendant referred in deciding on a course of action including, but not limited to, firing, promoting or demoting employees, downsizing or reorganization, elimination, combination, sale or purchase of departments; divisions, subsidiaries or other companies. The word "study" includes marketing analysis, predictive analysis, tests, quality assurance analysis, documentation of, summaries, or analysis of options, courses of action, costs, and benefits.

42.    "TCHR" means the Texas Commission on Human Rights.

43.    "Tests" mean any tests given or made by, or on behalf of, the Defendant or testes made by some other person, firm, or corporation that Defendant used. The word "tests" includes written and oral tests, skills tests, and static and dynamic tests.

44.    "This lawsuit" means the lawsuit identified in the style on the first page of this collection of documents.

45.    "Through the time of trial" shall mean from the number of years specified prior to the date this discovery was propounded through the time the parties in this lawsuit begin conducting voir dire.

46.    "Trade secret" or "trade secrets" means any confidential data, lists, compilations, systems, material or information relating to any aspect of defendant's business or operations including, but not limited to, any secret or confidential information relating to the business, customers, trade or industrial practices, policies, procedures, guidelines, forms, checklists, blueprints, trade secrets, technologies, recipes, systems, methods, confidential proprietary business methods, "know how" and similar information.

47.    "TWCC" means the Texas Workers' Compensation Commission.

48.    "TWC" means the Texas Workforce Commission.

49.    "Voice Mail" means magnetic, digital, or electronic telephonic message storage or archiving of messages originally contained on a telephone system, answering machine, or from an independent telephone service company.

50.    "You," "your," "yours," and "yourself," mean the defendant upon whom these discovery requests were served.

51.    "Your associates" means your agents, servants, partners, limited partners, subsidiaries, affiliates, principals, privies, directors, officers, joint venturers, or representatives.

52.    "Your attorneys" means the attorneys hired to represent you in or consult with you about this lawsuit or any previous labor and employment law matter.

53.    "Your employees" means any person employed by you who completed a W-2, whether employed full-time, part-time or temporarily. The term "your employees" shall also include

anyone who worked for you that was a borrowed employee or provided by a temporary employment agency or company.

54.    "Your joint venturers" means all of your divisions, subsidiaries, parent corporations, joint venturers partners, and affiliated corporations with whom you are joint venturers or partners, or share employees, directors, stock ownership or interlocking directorships.

55.    The singular shall include the plural and the plural the singular, whenever the effect of doing so is to increase the information responsive to the request for information.

Respectfully submitted,

THE PRUNEDA LAW FIRM, P.L.L.C.

P.O. Box T
Pharr, Texas 78577
Tel: (956) 702-9675
Fax: (956) 702-9659

By:

MICHAEL PRUNEDA
State Bar No. 24025601
Fed. I.D. No.  25659

ATTORNEY FOR PLAINTIFFS

### CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing document has been forwarded to opposing counsel of record as noted below:

Signed on this the _6_ day of _March_, 2003:

*Via Fax (210) 979-7024*

Joe A. De Los Santos
WALSH, ANDERSON, BROWN, SCHULZE & ALDRIDGE
100 NE Loop 410, Suite 1000
San Antonio, Texas 78216

Michael Pruneda

## INTERROGATORY NUMBER 1:

Please identify yourself by stating your full legal name, job title, social security number, driver's license number and state of issuance, mailing and physical address, phone numbers, including the name of any person(s) who have assisted you in answering these interrogatories.

## ANSWER:

## INTERROGATORY NUMBER 2:

Please give the following information:

(a) the name, address, job title, and telephone number of all persons or entities who *took part* in the investigation or consideration of Plaintiffs' employment. Please state whether statements were given;

(b) the name, address, job title, and telephone number all persons or entities who you *spoke to* with respect to the Plaintiffs' employment. Please state whether statements were given;

(c) the name, address, job title, and telephone number of all persons or entities who you *consulted* with respect to the Plaintiffs' employment. Please state whether statements were given;

(d) identify and describe what *discussions and conversations* you had with employees, supervisors, administrative officials, and public/ elected officials concerning Plaintiffs' employment, and any employment decisions relating to your employment. Please state whether statements were given; and

(e) if an internal investigation was made by you, your staff, other employees, or Brownsville I.S.D. of Plaintiffs', state what conclusion was reached as a result of that investigation.

## ANSWER:

## INTERROGATORY NUMBER 3:

Identify every legal proceeding in which you have been or are now involved. This question is to be interpreted to include involvement in current and past criminal and civil matters in which you have been a Plaintiff or a Defendant.

## ANSWER:

## INTERROGATORY NUMBER 4:

Please describe with specificity and detail your complete educational history and background, including any diplomas, degrees, and certifications you received and the date in which you received them, and the name, address, telephone number, and dates of attendance of any educational institutions you attended.

ANSWER:

INTERROGATORY NUMBER 5:

Please describe with specificity and detail your complete employment history and background, including the name, address, and telephone number of your employer, the dates of employment, the reason your employment ended, your rates of pay from each, your job title and duties, and your immediate supervisors for each.

ANSWER:

REQUEST FOR ADMISSION NO. 1:

Admit that you were employed with Brownsville I.S.D.

RESPONSE:

REQUEST FOR ADMISSION NO. 2:

Admit that you are currently employed with Brownsville I.S.D.

RESPONSE:

REQUEST FOR ADMISSION NO. 3:

Admit that you were employed with Brownsville I.S.D. and worked under the Superintendent.

RESPONSE:

REQUEST FOR ADMISSION NO. 4:

Admit that while employed with Brownsville I.S.D. and worked under the Superintendent you discussed Plaintiff Catalina Garcia with School Board member Randy Dunn.

RESPONSE:

REQUEST FOR ADMISSION NO. 5:

Admit that while employed with Brownsville I.S.D. and worked under the Superintendent you discussed Plaintiff Catalina Garcia with Johnny Cavazos.

RESPONSE:

REQUEST FOR ADMISSION NO. 6:

Admit that while employed with Brownsville I.S.D. and worked under the Superintendent you told Johnny Cavazos not to associate with Plaintiff Catalina Garcia.

RESPONSE:

## REQUEST FOR ADMISSION NO. 7:

Admit that while employed with Brownsville I.S.D. and worked under the Superintendent when you told Johnny Cavazos not to associate with Plaintiff Catalina Garcia that was a violation of her constitutional rights.

RESPONSE:

## INTERROGATORY NUMBER 6:

If you deny either the factual or legal claims brought by Plaintiffs, state all reasons why you deny each separately.

ANSWER:

## INTERROGATORY NUMBER 7:

Please identify with specificity any and all statements, documents, evidence, and all facts that support your claims or affirmative defenses in this case.

ANSWER:

## INTERROGATORY NUMBER 8:

Please identify any and all persons who you expect to call to testify at trial.

ANSWER:

## INTERROGATORY NO. 9:

If you denied any of the requests for admission preceding, describe with specificity and detail the facts and evidence that would justify your denial for each separately.

ANSWER:

## REQUESTS FOR PRODUCTION

1.    Please produce any and all charts, graphs, maps, physical models, or other graphic representations and documents which you plan to utilize as demonstrative exhibits at the time of trial or introduce into evidence at the time of trial.

RESPONSE:

2.    Please produce all documents and tangible things showing or supporting the facts and opinions to which any expert is expected to testify in this case, the grounds of the expert's opinions and the expert's conclusions. This request specifically includes (as to each such expert), but is not limited to, copies of all notes made by the expert, all notes made by others contained in such expert's file, all raw data furnished the expert, all data and calculation sheets made by the expert, copies of computer programs utilized by the expert, all reports prepared by the expert, and any exhibits prepared by or intended to be used by the expert in presenting the expert's opinions and conclusions in this case.

RESPONSE:

3.    Please produce all documents and other tangible things furnished to any of the experts who may testify on behalf of you in the lawsuit or whose opinions or impressions have been reviewed by any expert who may testify in the lawsuit.

RESPONSE:

4.    Please produce copies of all documents, articles or test materials out of professional journals, publications, books, treatises, or other professional writings, periodicals or pamphlets which have been reviewed by or will be utilized by your experts in connection with the lawsuit.

RESPONSE:

5.    Please produce all documents and other tangible things furnished to or prepared by any consulting expert whose opinions and/or impressions have been reviewed by an expert who you expect to call as an expert witness at the time of trial.

RESPONSE:

6.    Please produce all written or recorded statements or admissions made by any public/ elected official, director, employee, agent, or representative of Defendant Brownsville I.S.D. or Plaintiffs which in any way relate to the alleged claims or causes of action identified in Plaintiffs' lawsuit.

RESPONSE:

7.  Please produce all documents which constitute, or which embody, reference, list, record, or in any way mention, a communication between any agent or representative of Plaintiffs and any employee, agent or representative of Defendant Brownsville I.S.D.

**RESPONSE:**

8.  Please produce all documents which evidence, manifest, or relate to your net worth.

**RESPONSE:**

9.  Please produce for inspection and copying any and all documents that would evidence, manifest, refer to, or relate to the payment of any legal fees or court costs associated with or arising out of the litigation in this case, including without limitation, any invoices or statements received, any correspondence transmitting payment of any legal fees or court costs, any checks, drafts, money orders, or negotiable instruments tendered by you in payment of any legal fees or court costs, and any receipts, correspondence, or monthly statements acknowledging such payments.

**RESPONSE:**

10.  Please produce for inspection and copying any and all I.R.S. form W-2's or any other documents reflecting employment compensation received during the period January 1, 1998 through the present.

**RESPONSE:**

11.  Please produce for inspection and copying any and all I.R.S. form 1099's and documents reflecting any non-employment compensation received during the period January 1, 1998 through the present.

**RESPONSE:**

12.  Please produce for inspection and copying any and all checks, money orders, receipts or other documents that would reflect any wages, salary, or other compensation you received on or after January 31, 1998.

**RESPONSE:**

13.  Please produce for inspection and copying your U.S. federal Income Tax Return for the years during the period January 1, 1998 through the present.

**RESPONSE:**

14. Please produce for inspection and copying any documents and resumes you have submitted to any prospective employer during the period January 1, 1995 through the present.

**RESPONSE:**

15. Please produce for inspection and copying any and all documents which would reflect, manifest, or evidence your efforts to secure employment on or after January 1, 1995, including without limitation, the following:

    (a)    any applications for employment;

    (b)    any correspondence transmitting any applications for employment or resumes to any prospective employers;

    (c)    any newspaper advertisements or other written solicitations for employees to which you responded; and

    (d)    any diaries, notes, or other written records of your attempts (if any) to secure employment.

**RESPONSE:**

16. Please produce your job description(s) and any documents which would reflect your job duties while employed with Brownville I.S.D. and your current employment.

**RESPONSE:**

17. Please produce the attached employment authorization after you have signed it.

**RESPONSE:**

18. Please produce any and all documents that would evidence or show any complaints, grievances, or disputes between you and Brownsville I.S.D. or any Brownsville I.S.D. representative, official, or other agent.

**RESPONSE:**

## AUTHORIZATION FOR RELEASE
## OF EMPLOYMENT RECORDS

Re:    Name:    _____        Soc. Sec. #:    _____

        Address:    _____        D.O.B.:    _____
                    _____

**TO WHOM IT MAY CONCERN:**

    I, _____, hereby authorize, from the period of January 1, 1995 to the present, any employers, corporation or company to furnish THE PRUNEDA LAW FIRM, P.L.L.C. complete photocopies or other reproductions which it may request relative to any and all application(s), employment record(s), personnel file(s), payroll record(s), job title(s), work evaluation(s), and any other information, of every kind and description, which it may request relative to my past and present employment.

    It is my desire that you maintain the confidence of the confidentiality of any information you are in possession of that relates to me. Therefore, please do not release any information relating to me to anyone other than the above named attorney or law firm.

_____

**EDDIE ERRISURIZ**

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

NORMA ORTIZ and CATALINA GARCIA   ♦

V.             ♦
            ♦
            ♦
BROWNSVILLE INDEPENDENT SCHOOL  ♦  CIVIL ACTION B-02-184
DISTRICT, RANDY DUNN, NOE SAUCEDA  ♦
and EDDIE ERRISURIZ, in their official and  ♦  (JURY REQUESTED)
individual capacity, *and employees, agents, and all*  ♦
*those acting in concert or at their discretion*   ♦

**PLAINTIFFS' FIRST SET OF COMPREHENSIVE DISCOVERY REQUESTS
TO DEFENDANT RANDY DUNN**

TO:  Defendant by and through his attorneys of record:

*Via Fax (210) 979-7024*

Joe A. De Los Santos
WALSH, ANDERSON, BROWN, SCHULZE & ALDRIDGE
100 NE Loop 410, Suite 1000
San Antonio, Texas 78216

  Pursuant to the provisions of the Federal Rules of Civil Procedure, the undersigned party propounds the following interrogatories, requests for admissions, and requests for production. These requests are now being served as noted above and they should be answered in accordance with Federal Rules of Civil Procedure within thirty (30) days of the date you received them.

  In responding to the following discovery requests, furnish all information and items available to you, including information or items in the possession of your attorneys, or their investigators, and all persons acting in your behalf and not merely such information known of your own personal knowledge. If you cannot answer a question or respond to a request in full after exercising due diligence to secure the information or item requested, so state in your answer or response, and to the extent possible, answer or respond stating whatever information or knowledge you have.

  The requests that follow are to be considered as continuing. You are requested to provide, by way of supplemental answers hereto, additional information as you or any other person acting on



EXHIBIT C

your behalf may hereafter obtain it, which will augment or otherwise modify your answers given to the requests below. Such supplemental responses are to be filed and served upon this party immediately upon receipt of such information.

## INSTRUCTIONS

**A.    Interrogatories, Production, and Admissions**

Answer the attached Interrogatories separately and accurately in writing and under oath. You must deliver an original, sworn and executed response to these Interrogatories to opposing attorney within thirty (30) days after service of the Interrogatories. If these discovery requests were served on you before you filed an answer in this lawsuit then you need not respond until fifty (50) days after service of the discovery requests. Answer each discovery request separately and in accordance with the Federal Rules of Civil Procedure.

**B.    Additional Instructions**

If any or all documents identified or requested herein are no longer in existence or no longer in your possession, custody, or control because of destruction, transfer, loss, or any other reason, then identify each and every such document.

**C.    Instructions regarding any alleged ambiguity**

To avoid ambiguity, significant effort has been spent to define a number of terms used in the following discovery requests. If you or your attorney claim you do not understand the meaning of a term, please refer to the list of definitions or contact the opposing attorney for clarification.

## DEFINITIONS

As used herein, the following terms shall have the meaning indicated below:

1.    "**Advertisements**" mean any type or form of promotion, publicity, etc., including, but not limited to, radio, television, film, video, newspaper, Internet, E-mail, circulars, coupons, catalogs, electronic bulletin boards, signs, listings with services, listings in job fairs or job banks, products inserts, catalog inserts, Yellow Pages or other directories, fliers, print ads, promotional literature, billboards, posters, and brochures.

2.    "**Back-Up Tapes**" means magnetic tape storage or archiving "Electronic Information" originally contained on a "Computer System".

3.    "**Benefits**" or "**fringe benefits**" shall mean anything of value received, including but not limited to, life insurance policies or plans, health insurance I policies or plans, dental insurance policies or plans, disability insurance policies or plans, paid vacation, paid sick days, paid personal days, severance payments or packages, tuition reimbursement payments or plans, company picnics or parties, company retreats, company award programs at resorts that are paid for by the company, below market interest loans, credit union membership,

motor vehicles provided, car allowances, annuities, pension payments or plans, matching 401(k) or other type of pension or retirement payments, borrowing privileges against a 401(k) or other pension funds, employee awards or rewards programs, cafeteria plan benefits, programs that permit an employee to receive pay in a manner in which the employee gets tax benefits if the employee uses the income t pay for day care, deductibles on insurance payments, etc., vision payments or plans, country club memberships, club memberships, use of company owned tickets to sporting, musical, or other entertainment events, use of country clubs or other clubs of which the employer is a member, or any other type of perks or perquisites.

4.     "Communication" mean any oral or written utterance, notation, or statement of any nature whatsoever, by and to whomsoever made including, but not limited to, correspondence, conversations, dialogues, discussions, interviews, consultations, agreements, and other understandings or among two or more persons.

5.     "Computer or Computer Equipment" means all data processing equipment, including but not limited to, central processing units, tape drives, drum and disk storage devices, control units, input devices, and outpatient devices; all unit record equipment, including but not limited to, accumulators, calculators, and sorters; all record storage and retrieval equipment, including but not limited to, microfilm storage and retrieval apparatus, and audio/visual storage and retrieval apparatus.

6.     "Computer Application" means a program that performs a specific task or function including, e-mail messaging, word processing, or spreadsheets.

7.     The term "computer data" means any documents, information or data ever placed into or stored on any of your computers, including, but not limited to, the hard drive, laptops, disks, storage systems, retrieval systems and similar systems, E-mails, Internet transmissions, electronic bulletin boards, websites, diary systems, calendar systems, tickler systems and any other programs.

8.     "Computer or Electronic information or data or database" means all written or numerical information or data that is inputted, processed, or contained in the "Computer System" for any purpose.

9.     "Computer Log" means "Computer Systems" usage records such as a listing of electronically stores information, and may include title, subject matter, or first line of the document information and the date of the document.

10.    "Computer Program" means a set of instructions or steps, usually in symbolic form, that generates machine instruction and tells the computer how to handle a problem or sort information.

11.    "Computer System" means an assembly of computer operations and procedures, persons, equipment, and hardware and software, united by some form of regulated interaction to form an organized whole.

12.    "Computer System Media" means the type of material used for storage of electronic information and includes floppy disks, hard dries, and magnetic tapes.

13.    The term "contractual indemnity agreements" means any agreement whereby any person or business firm may be liable to pay a sum of money upon the happening of a particular event or contingency or upon the occurrence of a loss, judgment, peril, or risk.

14.    "Cost benefit" means any study, analysis or activity, by whatever name called, which has as its purpose, or serves the purpose of, assisting in the determination of the relative cost of any action or inaction considered by the Defendant and the estimated economic benefit of all alternatives, actions, or inactions considered.

15.    "Defendant" means RANDY DUNN

16.    "Defendant's Computer System" means any and all "Computer Equipment" or "Computer Systems" located at the defendant's premises or accessible for use by defendant.

17.    The term "documents" is used in the broadcast sense of that term and includes, in addition to the definition of documents pursuant to the Federal Rules of Civil Procedure, the original and all non-identical copies, whether different from the original by reason of notation made on such copies or otherwise, and all drafts of letters, telegrams, memoranda, reports of telephone conversations, ledgers, time cards, time logs, work logs, hourly logs, journals, personnel files, invoices, bills, sales orders, call reports, e-mails, financial and business records, receipts, contracts, reports, studies, calendar entries, diary entries, maps, pamphlets, notes, charts, forms, tabulations, analyses, statistical or informational accumulations, summaries or abstracts, any kind of records of meetings or conversations, firm impressions, sound or mechanical reproductions, rules, regulations, opinions, orders, interpretations, exceptions, position papers, guidelines, agency documents, publications, instructions, transparencies, handbooks, manuals, operating procedures, appointment calendars, call slips, file jackets, course materials, training materials, minutes, photographs, videotapes, cassette tapes, films, press releases, speeches, affidavits, witness statements, surveys, graphs, statistics, tables, printed or type written forms, indices, agreements, canceled checks, correspondence, memos, data on computer, storage, data on computer disks, data stored on computer backup, telephone message slips, sketches, notes of conversations, and all other written, printed, typed, or other reported matter (including electronic or magnetic recordings), photographs, or other data compilations in which information can be obtained, which are in the possession, custody, or control of you, your attorneys, agents, physicians, directors, officers, partners, affiliates, subsidiaries, servants, or employees.

18.    "EEO assurance" means any and all efforts, including, but not limited to, record keeping, studies, tests, inspections, audits, and examinations, and other activities conducted by or on behalf of you for the purpose of ascertaining whether or not your company provides its employees equal employment opportunities and an environment free of discrimination and harassment.

19.    "EEO" means equal employment opportunity.

20.    "EEOC" means the Equal Employment Opportunity Commission.

21.    "E-Mail means an electronic messaging application that provides for the receipt and sending of messages among users of a computer system and possibly to and from remote users.

22.   "Governmental entity" means any governmental organization including, but not limited to, any international, federal, state, regional, county, parish, city (whether incorporated, unincorporated, or home rule) elective body, appointed body, legislative body, board, commission, agency, department, division, subdivision, and any other department or division of any of the previously listed entities.

23.   "Identify" or "name" means to provide the complete identity, to the extent known or ascertainable by you or your attorneys, agents, directors, officers, employees, partners, subsidiaries and affiliates, and includes, without limitation, a request for the following information:

   (a)   Where the term to be identified is a person, the person's full name, present or last known address and telephone number, and present or last known employer;

   (b)   Where the term to be identified is a document, its character or title, the date it was created, and the author or signatory;

   (c)   Where the item to be identified is a statement, the exact language or nature of the statement and the person who made the statement; and

   (d)   Where the information to be identified is a lawsuit, the name of the lawsuit and the court where it was filed.

24.   The "incident" means the facts and circumstances concerning the subject of this lawsuit.

25.   "Income" shall mean any type of remuneration including, but not limited to, wages, pay, commissions income listed on a W-2, bonuses, emoluments, and remittances.

26.   "Industry group" and "industry groups" mean any association, company, corporation, or trade group that includes in its membership individuals, companies, corporations, safety organizations, or employment organizations. Examples of such industry groups include, but are not limited to, the Better Business Bureau, Society for Human Resource Management, Advocacy, Inc., National Organization of Women, Equal Employment Advisory Council, National Chamber of Commerce, Institute for Injury Reduction, Job Accommodation Network, NEMA, National Employee Rights Institute, National Employment Law Product, 9 to 5/National Association of Working Women, Government Accountability Project, Taxpayers Against Fraud, National Safety Council, International Occupational Safety & Health Information Center, National Institute for Occupational Safety & Health, and The British Standards Institute.

27.   "Insurance carriers" means any and all insurance carriers, whether primary, excess or a reinsurer.

28.   "Insurance policy" means any type of agreement or insurance policy under which any person or organization may be liable to pay all or part of any judgment which may be entered in this lawsuit, or to indemnify or reimburse for the costs or attorneys' fees incurred in being a party to this lawsuit, or to indemnify or reimburse for payments made to satisfy any judgment entered in this lawsuit. "Insurance policy" includes all types of insurance policies, including but not limited to, comprehensive director and officer, errors and omissions, general liability, bonds, workers' compensation, limited liability, automobile,

boiler and machinery, nuclear, fidelity, personal injury, property care, custody and control, contractual liability insurance, commercial blanket bond coverage, builder's risk, employment practices liability, all risk, excess and umbrella.  Further, "insurance policy" means and includes, but is not limited to, all insurance policies and attachments thereto, and other similar documents pertaining to the insurance policy, including, but not limited to, declaration pages, certificates of insurance, exclusions, endorsements, amendments, riders, and binders.

29.     The "last ten years to the present" means ten years preceding, the service of this discovery through the present.  Pursuant to the supplementation requirement under the Rules of Procedure, you are hereby requested to update your answers regarding all complaints, lawsuits, settlements, information, documents, etc., that arise or are created or come to your attention during the pendency of this lawsuit.

30.     "Medical facility" means any place where a person receives any medical or mental health assistance, treatment, advice, care, or counseling for any illnesses, conditions, or problems.  This includes first aid stations, Medi-stop, nurses stations, clinics, hospitals, emergency rooms, treatment centers, church counseling, non-profit counseling, doctors' offices, etc.

31.     "Medical professional" or "person(s) practicing the medical or healing arts" means anyone providing assistance to you for health, medical, or mental problems.  This includes, but is not limited to, doctors, counselors, psychiatrists, psychologists, pastors, ministers, priests, faith healers, shamans, medicine men, rabbis, nurses, midwives, therapists, acupuncture practitioners, specialists in holistic medicine or alternative healing methods.

32.     "Operating System" means an organized collection of programs for operating a computer, usually part of a software package defined to simplify housekeeping such as input/output procedures, sort merge generators, and so on.

33.     "Opposing attorney" means the attorney who represents the defendant upon whom these discovery requests were served.

34.     "Or" and "and" mean and/or.

35.     "Person" or "persons" means not only natural persons, but also corporations, partnerships, organizations, associations, industry groups, entities, joint venturers, or any government or governmental entity, commission, or agency and any divisions or departments or other units of any of the entities defined herein.

36.     "Photographs," "photos," "videos," and "videotapes" mean all films, negatives, slides, photos, digital images, visual images stored on computers, Polaroid, movie pictures, videotapes, movies, and pictures, whether developed or not.

37.     "Plaintiffs" means NORMA ORTIZ and CATALINA GARCIA

38.     "Purge" means to periodically or randomly delete or take off of the "Computer System E-Mail" messages and transfer this information to "Back-Up Tapes" to restore or make usable computer memory.

39.     "User" means a person who has access to a computer or in any manner uses or directs another to use any information stored in or generated by a computer.

40.   The "Rules of Civil Procedure" means the Federal Rules of Civil Procedure.

41.   "Study" and "Studies" mean any study made by or on behalf of the Defendant or a study made by some other person, firm or corporation to which the Defendant referred in deciding on a course of action including, but not limited to, firing, promoting or demoting employees, downsizing or reorganization, elimination, combination, sale or purchase of departments, divisions, subsidiaries or other companies.  The word "study" includes marketing analysis, predictive analysis, tests, quality assurance analysis, documentation of, summaries, or analysis of options, courses of action, costs, and benefits.

42.   "TCHR" means the Texas Commission on Human Rights.

43.   "Tests" mean any tests given or made by, or on behalf of, the Defendant or testes made by some other person, firm, or corporation that Defendant used.  The word "tests" includes written and oral tests, skills tests, and static and dynamic tests.

44.   "This lawsuit" means the lawsuit identified in the style on the first page of this collection of documents.

45.   "Through the time of trial" shall mean from the number of years specified prior to the date this discovery was propounded through the time the parties in this lawsuit begin conducting voir dire.

46.   "Trade secret" or "trade secrets" means any confidential data, lists, compilations, systems, material or information relating to any aspect of defendant's business or operations including, but not limited to, any secret or confidential information relating to the business, customers, trade or industrial practices, policies, procedures, guidelines, forms, checklists, blueprints, trade secrets, technologies, recipes, systems, methods, confidential proprietary business methods, "know how" and similar information.

47.   "TWCC" means the Texas Workers' Compensation Commission.

48.   "TWC" means the Texas Workforce Commission.

49.   "Voice Mail" means magnetic, digital, or electronic telephonic message storage or archiving of messages originally contained on a telephone system, answering machine, or from an independent telephone service company.

50.   "You," "your," "yours," and "yourself," mean the defendant upon whom these discovery requests were served.

51.   "Your associates" means your agents, servants, partners, limited partners, subsidiaries, affiliates, principals, privies, directors, officers, joint venturers, or representatives.

52.   "Your attorneys" means the attorneys hired to represent you in or consult with you about this lawsuit or any previous labor and employment law matter.

53.   "Your employees" means any person employed by you who completed a W-2, whether employed full-time, part-time or temporarily.  The term "your employees" shall also include

anyone who worked for you that was a borrowed employee or provided by a temporary employment agency or company.

54.    "Your joint venturers" means all of your divisions, subsidiaries, parent corporations, joint venturers partners, and affiliated corporations with whom you are joint venturers or partners, or share employees, directors, stock ownership or interlocking directorships.

55.    The singular shall include the plural and the plural the singular, whenever the effect of doing so is to increase the information responsive to the request for information.

Respectfully submitted,

THE PRUNEDA LAW FIRM, P.L.L.C.

P.O. Box T
Pharr, Texas 78577
Tel: (956) 702-9675
Fax: (956) 702-9659

By:    _____
MICHAEL PRUNEDA
State Bar No. 24025601
Fed. I.D. No. 25659

ATTORNEY FOR PLAINTIFFS


CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing document has been forwarded to opposing counsel of record as noted below:

Signed on this the 6 day of March, 2003:

*Via Fax (210) 979-7024*

Joe A. De Los Santos
WALSH, ANDERSON, BROWN, SCHULZE & ALDRIDGE
100 NE Loop 410, Suite 1000
San Antonio, Texas 78216

_____
Michael Pruneda

**INTERROGATORY NUMBER 1:**

Please identify yourself by stating your full legal name, job title, social security number, driver's license number and state of issuance, mailing and physical address, phone numbers, including the name of any person(s) who have assisted you in answering these interrogatories.

**ANSWER:**

**INTERROGATORY NUMBER 2:**

Please give the following information:

(a)    the name, address, job title, and telephone number of all persons or entities who *took part* in the investigation or consideration of Plaintiffs' employment.  Please state whether statements were given;

(b)    the name, address, job title, and telephone number all persons or entities who you *spoke to* with respect to the Plaintiffs' employment.  Please state whether statements were given;

(c)    the name, address, job title, and telephone number of all persons or entities who you *consulted* with respect to the Plaintiffs' employment .  Please state whether statements were given;

(d)    identify and describe what *discussions and conversations* you had with employees, supervisors, administrative officials, and public/ elected officials concerning Plaintiffs' employment, and any employment decisions relating to your employment. Please state whether statements were given; and

(e)    if an internal investigation was made by you, your staff, other employees, or Brownsville I.S.D. of Plaintiffs', state what conclusion was reached as a result of that investigation.

**ANSWER:**

**INTERROGATORY NUMBER 3:**

Identify every legal proceeding in which you have been or are now involved. This question is to be interpreted to include involvement in current and past criminal and civil matters in which you have been a Plaintiff or a Defendant.

**ANSWER:**

**INTERROGATORY NUMBER 4:**

Please describe with specificity and detail your complete educational history and background, including any diplomas, degrees, and certifications you received and the date in which you received them, and the name, address, telephone number, and dates of attendance of any educational institutions you attended.

**ANSWER:**

**INTERROGATORY NUMBER 5:**

Please describe with specificity and detail your complete employment history and background, including the name, address, and telephone number of your employer, the dates of employment, the reason your employment ended, your rates of pay from each, your job title and duties, and your immediate supervisors for each.

**ANSWER:**

**REQUEST FOR ADMISSION NO. 1:**

Admit that you are a member of the Brownsville I.S.D. School Board.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 2:**

Admit that while a member of the Brownsville I.S.D. School Board you discussed Plaintiff Catalina Garcia with Johnny Cavazos.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 3:**

Admit that while a member of the Brownsville I.S.D. School Board you discussed Plaintiff Catalina Garcia with Charles Hoskins.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 4:**

Admit that while a member of the Brownsville I.S.D. School Board you discussed Plaintiff Catalina Garcia with Otis Powers.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 5:**

Admit that while a member of the Brownsville I.S.D. School Board you told Johnny Cavazos that Catalina Garcia was a bitch.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 6:**

Admit that while a member of the Brownsville I.S.D. School Board you told Johnny Cavazos that if anyone wanted to do business with Brownsville I.S.D. they should stay away from Catalina Garcia.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 7:**

Admit that while a member of the Brownsville I.S.D. School Board telling someone that if they wanted to do business with Brownsville I.S.D. they should stay away from Catalina Garcia is illegal.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 8:**

Admit that while a member of the Brownsville I.S.D. School Board telling someone that if they wanted to do business with Brownsville I.S.D. they should stay away from Catalina Garcia violated her constitutional rights.

**RESPONSE:**

**INTERROGATORY NUMBER 6:**

If you deny either the factual or legal claims brought by Plaintiffs, state all reasons why you deny each separately.

**ANSWER:**

**INTERROGATORY NUMBER 7:**

Please identify with specificity any and all statements, documents, evidence, and all facts that support your claims or affirmative defenses in this case.

**ANSWER:**

**INTERROGATORY NUMBER 8:**

Please identify any and all persons who you expect to call to testify at trial.

**ANSWER:**

**INTERROGATORY NO. 9:**

If you denied any of the requests for admission preceding, describe with specificity and detail the facts and evidence that would justify your denial for each separately.

**ANSWER:**

## REQUESTS FOR PRODUCTION

1.    Please produce any and all charts, graphs, maps, physical models, or other graphic representations and documents which you plan to utilize as demonstrative exhibits at the time of trial or introduce into evidence at the time of trial.

**RESPONSE:**

2.    Please produce all documents and tangible things showing or supporting the facts and opinions to which any expert is expected to testify in this case, the grounds of the expert's opinions and the expert's conclusions. This request specifically includes (as to each such expert), but is not limited to, copies of all notes made by the expert, all notes made by others contained in such expert's file, all raw data furnished the expert, all data and calculation sheets made by the expert, copies of computer programs utilized by the expert, all reports prepared by the expert, and any exhibits prepared by or intended to be used by the expert in presenting the expert's opinions and conclusions in this case.

**RESPONSE:**

3.    Please produce all documents and other tangible things furnished to any of the experts who may testify on behalf of you in the lawsuit or whose opinions or impressions have been reviewed by any expert who may testify in the lawsuit.

**RESPONSE:**

4.    Please produce copies of all documents, articles or test materials out of professional journals, publications, books, treatises, or other professional writings, periodicals or pamphlets which have been reviewed by or will be utilized by your experts in connection with the lawsuit.

**RESPONSE:**

5.    Please produce all documents and other tangible things furnished to or prepared by any consulting expert whose opinions and/or impressions have been reviewed by an expert who you expect to call as an expert witness at the time of trial.

**RESPONSE:**

6.    Please produce all written or recorded statements or admissions made by any public/ elected official, director, employee, agent, or representative of Defendant Brownsville I.S.D. or Plaintiffs which in any way relate to the alleged claims or causes of action identified in Plaintiffs' lawsuit.

**RESPONSE:**

7.    Please produce all documents which constitute, or which embody, reference, list, record, or in any way mention, a communication between any agent or representative of Plaintiffs and any employee, agent or representative of Defendant Brownsville I.S.D.

RESPONSE:

8.    Please produce all documents which evidence, manifest, or relate to your net worth.

RESPONSE:

9.    Please produce for inspection and copying any and all documents that would evidence, manifest, refer to, or relate to the payment of any legal fees or court costs associated with or arising out of the litigation in this case, including without limitation, any invoices or statements received, any correspondence transmitting payment of any legal fees or court costs, any checks, drafts, money orders, or negotiable instruments tendered by you in payment of any legal fees or court costs, and any receipts, correspondence, or monthly statements acknowledging such payments.

RESPONSE:

10.    Please produce for inspection and copying any and all I.R.S. form W-2's or any other documents reflecting employment compensation received during the period January 1, 1998 through the present.

RESPONSE:

11.    Please produce for inspection and copying any and all I.R.S. form 1099's and documents reflecting any non-employment compensation received during the period January 1, 1998 through the present.

RESPONSE:

12.    Please produce for inspection and copying any and all checks, money orders, receipts or other documents that would reflect any wages, salary, or other compensation you received on or after January 31, 1998.

RESPONSE:

13.    Please produce for inspection and copying your U.S. federal Income Tax Return for the years during the period January 1, 1998 through the present.

RESPONSE:

14.   Please produce for inspection and copying any documents and resumes you have submitted to any prospective employer during the period January 1, 1995 through the present.

RESPONSE:

15.   Please produce for inspection and copying any and all documents which would reflect, manifest, or evidence your efforts to secure employment on or after January 1, 1995, including without limitation, the following:

     (a)   any applications for employment;

     (b)   any correspondence transmitting any applications for employment or resumes to any prospective employers;

     (c)   any newspaper advertisements or other written solicitations for employees to which you responded; and

     (d)   any diaries, notes, or other written records of your attempts (if any) to secure employment.

RESPONSE:

16.   Please produce your job description(s) and any documents which would reflect your job duties while employed with Brownville I.S.D. and your current employment.

RESPONSE:

17.   Please produce the attached employment authorization after you have signed it.

RESPONSE:

18.   Please produce any and all documents that would evidence or show any complaints, grievances, or disputes between you and Brownsville I.S.D. or any Brownsville I.S.D. representative, official, or other agent.

RESPONSE:

## AUTHORIZATION FOR RELEASE
## OF EMPLOYMENT RECORDS

Re:  **Name:** _____    **Soc. Sec. #:** _____

    **Address:** _____    **D.O.B.:** _____

    _____

**TO WHOM IT MAY CONCERN:**

    I, _____, hereby authorize, from the period of January 1, 1995 to the present, any employers, corporation or company to furnish THE PRUNEDA LAW FIRM, P.L.L.C. complete photocopies or other reproductions which it may request relative to any and all application(s), employment record(s), personnel file(s), payroll record(s), job title(s), work evaluation(s), and any other information, of every kind and description, which it may request relative to my past and present employment.

    It is my desire that you maintain the confidence of the confidentiality of any information you are in possession of that relates to me. Therefore, please do not release any information relating to me to anyone other than the above named attorney or law firm.

_____

**RANDY DUNN**

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| NORMA ORTIZ and CATALINA GARCIA | ♦ | |
| | ♦ | |
| V. | ♦ | |
| | ♦ | |
| | ♦ | CIVIL ACTION B-02-184 |
| BROWNSVILLE INDEPENDENT SCHOOL | ♦ | |
| DISTRICT, RANDY DUNN, NOE SAUCEDA | ♦ | (JURY REQUESTED) |
| and EDDIE ERRISURIZ, in their official and | ♦ | |
| individual capacity, *and employees, agents, and all* | ♦ | |
| *those acting in concert or at their discretion* | ♦ | |

**PLAINTIFFS' FOURTH REQUEST FOR PRODUCTION TO
DEFENDANT BROWNSVILLE ISD**

TO:    Defendant by and through his attorneys of record:

*Via Fax (210) 979-7024*

Joe A. De Los Santos
WALSH, ANDERSON, BROWN, SCHULZE & ALDRIDGE
100 NE Loop 410, Suite 1000
San Antonio, Texas 78216

Pursuant to the provisions of the Federal Rules of Civil Procedure, the undersigned party propounds the following interrogatories, requests for admissions, and requests for production. These requests are now being served as noted above and they should be answered in accordance with Federal Rules of Civil Procedure within thirty (30) days of the date you received them.

In responding to the following discovery requests, furnish all information and items available to you, including information or items in the possession of your attorneys, or their investigators, and all persons acting in your behalf and not merely such information known of your own personal knowledge. If you cannot answer a question or respond to a request in full after exercising due diligence to secure the information or item requested, so state in your answer or response, and to the extent possible, answer or respond stating whatever information or knowledge you have.

The requests that follow are to be considered as continuing. You are requested to provide, by way of supplemental answers hereto, additional information as you or any other person acting on


EXHIBIT D

your behalf may hereafter obtain it, which will augment or otherwise modify your answers given to the requests below.  Such supplemental responses are to be filed and served upon this party immediately upon receipt of such information.

## INSTRUCTIONS

**A.**     Interrogatories, Production, and Admissions

Answer the attached Interrogatories separately and accurately in writing and under oath. You must deliver an original, sworn and executed response to these Interrogatories to opposing attorney within thirty (30) days after service of the Interrogatories.  If these discovery requests were served on you before you filed an answer in this lawsuit then you need not respond until fifty (50) days after service of the discovery requests.  Answer each discovery request separately and in accordance with the Federal Rules of Civil Procedure.

**B.**     Additional Instructions

If any or all documents identified or requested herein are no longer in existence or no longer in your possession, custody, or control because of destruction, transfer, loss, or any other reason, then identify each and every such document.

**C.**     Instructions regarding any alleged ambiguity

To avoid ambiguity, significant effort has been spent to define a number of terms used in the following discovery requests.  If you or your attorney claim you do not understand the meaning of a term, please refer to the list of definitions or contact the opposing attorney for clarification.

## DEFINITIONS

As used herein, the following terms shall have the meaning indicated below:

1.     "**Advertisements**" mean any type or form of promotion, publicity, etc., including, but not limited to, radio, television, film, video, newspaper, Internet, E-mail, circulars, coupons, catalogs, electronic bulletin boards, signs, listings with services, listings in job fairs or job banks, products inserts, catalog inserts, Yellow Pages or other directories, fliers, print ads, promotional literature, billboards, posters, and brochures.

2.     "**Back-Up Tapes**" means magnetic tape storage or archiving "Electronic Information" originally contained on a "Computer System".

3.     "**Benefits**" or "**fringe benefits**" shall mean anything of value received, including but not limited to, life insurance policies or plans, health insurance I policies or plans, dental insurance policies or plans, disability insurance policies or plans, paid vacation, paid sick days, paid personal days, severance payments or packages, tuition reimbursement payments or plans, company picnics or parties, company retreats, company award programs at resorts that are paid for by the company, below market interest loans, credit union membership,

motor vehicles provided, car allowances, annuities, pension payments or plans, matching 401(k) or other type of pension or retirement payments, borrowing privileges against a 401(k) or other pension funds, employee awards or rewards programs, cafeteria plan benefits, programs that permit an employee to receive pay in a manner in which the employee gets tax benefits if the employee uses the income t pay for day care, deductibles on insurance payments, etc., vision payments or plans, country club memberships, club memberships, use of company owned tickets to sporting, musical, or other entertainment events, use of country clubs or other clubs of which the employer is a member, or any other type of perks or perquisites.

4. "Communication" mean any oral or written utterance, notation, or statement of any nature whatsoever, by and to whomsoever made including, but not limited to, correspondence, conversations, dialogues, discussions, interviews, consultations, agreements, and other understandings or among two or more persons.

5. "Computer or Computer Equipment" means all data processing equipment, including but not limited to, central processing units, tape drives, drum and disk storage devices, control units, input devices, and outpatient devices; all unit record equipment, including but not limited to, accumulators, calculators, and sorters; all record storage and retrieval equipment, including but not limited to, microfilm storage and retrieval apparatus, and audio/visual storage and retrieval apparatus.

6. "Computer Application" means a program that performs a specific task or function including, e-mail messaging, word processing, or spreadsheets.

7. The term "computer data" means any documents, information or data ever placed into or stored on any of your computers, including, but not limited to, the hard drive, laptops, disks, storage systems, retrieval systems and similar systems, E-mails, Internet transmissions, electronic bulletin boards, websites, diary systems, calendar systems, tickler systems and any other programs.

8. "Computer or Electronic information or data or database" means all written or numerical information or data that is inputted, processed, or contained in the "Computer System" for any purpose.

9. "Computer Log" means "Computer Systems" usage records such as a listing of electronically stores information, and may include title, subject matter, or first line of the document information and the date of the document.

10. "Computer Program" means a set of instructions or steps, usually in symbolic form, that generates machine instruction and tells the computer how to handle a problem or sort information.

11. "Computer System" means an assembly of computer operations and procedures, persons, equipment, and hardware and software, united by some form of regulated interaction to form an organized whole.

12.   "Computer System Media" means the type of material used for storage of electronic information and includes floppy disks, hard dries, and magnetic tapes.

13.   The term "contractual indemnity agreements" means any agreement whereby any person or business firm may be liable to pay a sum of money upon the happening of a particular event or contingency or upon the occurrence of a loss, judgment, peril, or risk.

14.   "Cost benefit" means any study, analysis or activity, by whatever name called, which has as its purpose, or serves the purpose of, assisting in the determination of the relative cost of any action or inaction considered by the Defendant and the estimated economic benefit of all alternatives, actions, or inactions considered.

15.   "Defendant" means BROWNSVILLE INDEPENDENT SCHOOL DISTRICT / BISD

16.   "Defendant's Computer System" means any and all "Computer Equipment" or "Computer Systems" located at the defendant's premises or accessible for use by defendant.

17.   The term "documents" is used in the broadcast sense of that term and includes, in addition to the definition of documents pursuant to the Federal Rules of Civil Procedure, the original and all non-identical copies, whether different from the original by reason of notation made on such copies or otherwise, and all drafts of letters, telegrams, memoranda, reports of telephone conversations, ledgers, time cards, time logs, work logs, hourly logs, journals, personnel files, invoices, bills, sales orders, call reports, e-mails, financial and business records, receipts, contracts, reports, studies, calendar entries, diary entries, maps, pamphlets, notes, charts, forms, tabulations, analyses, statistical or informational accumulations, summaries or abstracts, any kind of records of meetings or conversations, firm impressions, sound or mechanical reproductions, rules, regulations, opinions, orders, interpretations, exceptions, position papers, guidelines, agency documents, publications, instructions, transparencies, handbooks, manuals, operating procedures, appointment calendars, call slips, file jackets, course materials, training materials, minutes, photographs, videotapes, cassette tapes, films, press releases, speeches, affidavits, witness statements, surveys, graphs, statistics, tables, printed or type written forms, indices, agreements, canceled checks, correspondence, memos, data on computer, storage, data on computer disks, data stored on computer backup, telephone message slips, sketches, notes of conversations, and all other written, printed, typed, or other reported matter (including electronic or magnetic recordings), photographs, or other data compilations in which information can be obtained, which are in the possession, custody, or control of you, your attorneys, agents, physicians, directors, officers, partners, affiliates, subsidiaries, servants, or employees.

18.   "EEO assurance" means any and all efforts, including, but not limited to, record keeping, studies, tests, inspections, audits, and examinations, and other activities conducted by or on behalf of you for the purpose of ascertaining whether or not your company provides its employees equal employment opportunities and an environment free of discrimination and harassment.

19.   "EEO" means equal employment opportunity.

20.   "EEOC" means the Equal Employment Opportunity Commission.

21.   "E-Mail means an electronic messaging application that provides for the receipt and sending of messages among users of a computer system and possibly to and from remote users.

22. "Governmental entity" means any governmental organization including, but not limited to, any international, federal, state, regional, county, parish, city (whether incorporated, unincorporated, or home rule) elective body, appointed body, legislative body, board, commission, agency, department, division, subdivision, and any other department or division of any of the previously listed entities.

23. "Identify" or "name" means to provide the complete identity, to the extent known or ascertainable by you or your attorneys, agents, directors, officers, employees, partners, subsidiaries and affiliates, and includes, without limitation, a request for the following information:

    (a)    Where the term to be identified is a person, the person's full name, present or last known address and telephone number, and present or last known employer;

    (b)    Where the term to be identified is a document, its character or title, the date it was created, and the author or signatory;

    (c)    Where the item to be identified is a statement, the exact language or nature of the statement and the person who made the statement; and

    (d)    Where the information to be identified is a lawsuit, the name of the lawsuit and the court where it was filed.

24. The "incident" means the facts and circumstances concerning the subject of this lawsuit.

25. "Income" shall mean any type of remuneration including, but not limited to, wages, pay, commissions income listed on a W-2, bonuses, emoluments, and remittances.

26. "Industry group" and "industry groups" mean any association, company, corporation, or trade group that includes in its membership individuals, companies, corporations, safety organizations, or employment organizations. Examples of such industry groups include, but are not limited to, the Better Business Bureau, Society for Human Resource Management, Advocacy, Inc., National Organization of Women, Equal Employment Advisory Council, National Chamber of Commerce, Institute for Injury Reduction, Job Accommodation Network, NEMA, National Employee Rights Institute, National Employment Law Product, 9 to 5/National Association of Working Women, Government Accountability Project, Taxpayers Against Fraud, National Safety Council, International Occupational Safety & Health Information Center, National Institute for Occupational Safety & Health, and The British Standards Institute.

27. "Insurance carriers" means any and all insurance carriers, whether primary, excess or a reinsurer.

28. "Insurance policy" means any type of agreement or insurance policy under which any person or organization may be liable to pay all or part of any judgment which may be entered in this lawsuit, or to indemnify or reimburse for the costs or attorneys' fees incurred in being a party to this lawsuit, or to indemnify or reimburse for payments made to satisfy any judgment entered in this lawsuit. "Insurance policy" includes all types of insurance policies, including but not limited to, comprehensive director and officer, errors and omissions, general liability, bonds, workers' compensation, limited liability, automobile,

boiler and machinery, nuclear, fidelity, personal injury, property care, custody and control, contractual liability insurance, commercial blanket bond coverage, builder's risk, employment practices liability, all risk, excess and umbrella. Further, "insurance policy" means and includes, but is not limited to, all insurance policies and attachments thereto, and other similar documents pertaining to the insurance policy, including, but not limited to, declaration pages, certificates of insurance, exclusions, endorsements, amendments, riders, and binders.

29.    The "last ten years to the present" means ten years preceding, the service of this discovery through the present. Pursuant to the supplementation requirement under the Rules of Procedure, you are hereby requested to update your answers regarding all complaints, lawsuits, settlements, information, documents, etc., that arise or are created or come to your attention during the pendency of this lawsuit.

30.    "Medical facility" means any place where a person receives any medical or mental health assistance, treatment, advice, care, or counseling for any illnesses, conditions, or problems. This includes first aid stations, Medi-stop, nurses stations, clinics, hospitals, emergency rooms, treatment centers, church counseling, non-profit counseling, doctors' offices, etc.

31.    "Medical professional" or "person(s) practicing the medical or healing arts" means anyone providing assistance to you for health, medical, or mental problems. This includes, but is not limited to, doctors, counselors, psychiatrists, psychologists, pastors, ministers, priests, faith healers, shamans, medicine men, rabbis, nurses, midwives, therapists, acupuncture practitioners, specialists in holistic medicine or alternative healing methods.

32.    "Operating System" means an organized collection of programs for operating a computer, usually part of a software package defined to simplify housekeeping such as input/output procedures, sort merge generators, and so on.

33.    "Opposing attorney" means the attorney who represents the defendant upon whom these discovery requests were served.

34.    "Or" and "and" mean and/or.

35.    "Person" or "persons" means not only natural persons, but also corporations, partnerships, organizations, associations, industry groups, entities, joint venturers, or any government or governmental entity, commission, or agency and any divisions or departments or other units of any of the entities defined herein.

36.    "Photographs," "photos," "videos," and "videotapes" mean all films, negatives, slides, photos, digital images, visual images stored on computers, Polaroid, movie pictures, videotapes, movies, and pictures, whether developed or not.

37.    "Plaintiffs" means NORMA ORTIZ and CATALINA GARCIA

38.    "Purge" means to periodically or randomly delete or take off of the "Computer System E-Mail" messages and transfer this information to "Back-Up Tapes" to restore or make usable computer memory.

39.    "User" means a person who has access to a computer or in any manner uses or directs another to use any information stored in or generated by a computer.

40. The "Rules of Civil Procedure" means the Federal Rules of Civil Procedure.

41. "Study" and "Studies" mean any study made by or on behalf of the Defendant or a study made by some other person, firm or corporation to which the Defendant referred in deciding on a course of action including, but not limited to, firing, promoting or demoting employees, downsizing or reorganization, elimination, combination, sale or purchase of departments, divisions, subsidiaries or other companies. The word "study" includes marketing analysis, predictive analysis, tests, quality assurance analysis, documentation of, summaries, or analysis of options, courses of action, costs, and benefits.

42. "TCHR" means the Texas Commission on Human Rights.

43. "Tests" mean any tests given or made by, or on behalf of, the Defendant or testes made by some other person, firm, or corporation that Defendant used. The word "tests" includes written and oral tests, skills tests, and static and dynamic tests.

44. "This lawsuit" means the lawsuit identified in the style on the first page of this collection of documents.

45. "Through the time of trial" shall mean from the number of years specified prior to the date this discovery was propounded through the time the parties in this lawsuit begin conducting voir dire.

46. "Trade secret" or "trade secrets" means any confidential data, lists, compilations, systems, material or information relating to any aspect of defendant's business or operations including, but not limited to, any secret or confidential information relating to the business, customers, trade or industrial practices, policies, procedures, guidelines, forms, checklists, blueprints, trade secrets, technologies, recipes, systems, methods, confidential proprietary business methods, "know-how" and similar information.

47. "TWCC" means the Texas Workers' Compensation Commission.

48. "TWC" means the Texas Workforce Commission.

49. "Voice Mail" means magnetic, digital, or electronic telephonic message storage or archiving of messages originally contained on a telephone system, answering machine, or from an independent telephone service company.

50. "You," "your," "yours," and "yourself," mean the defendant upon whom these discovery requests were served.

51. "Your associates" means your agents, servants, partners, limited partners, subsidiaries, affiliates, principals, privies, directors, officers, joint venturers, or representatives.

52. "Your attorneys" means the attorneys hired to represent you in or consult with you about this lawsuit or any previous labor and employment law matter.

53. "Your employees" means any person employed by you who completed a W-2, whether employed full-time, part-time or temporarily. The term "your employees" shall also include

anyone who worked for you that was a borrowed employee or provided by a temporary employment agency or company.

54.   "Your joint venturers" means all of your divisions, subsidiaries, parent corporations, joint venturers partners, and affiliated corporations with whom you are joint venturers or partners, or share employees, directors, stock ownership or interlocking directorships.

55.   The singular shall include the plural and the plural the singular, whenever the effect of doing so is to increase the information responsive to the request for information.

Respectfully submitted,

THE PRUNEDA LAW FIRM, P.L.L.C.

P.O. Box T
Pharr, Texas 78577
Tel: (956) 702-9675
Fax: (956) 702-9659

By: _____

MICHAEL PRUNEDA
State Bar No. 24025601
Fed. I.D. No. 25659

ATTORNEY FOR PLAINTIFFS

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing document has been forwarded to opposing counsel of record as noted below:

Signed on this the 6 day of March, 2003:

Via Fax (210) 979-7024

Joe A. De Los Santos
WALSH, ANDERSON, BROWN, SCHULZE & ALDRIDGE
100 NE Loop 410, Suite 1000
San Antonio, Texas 78216

Michael Pruneda

## PLAINTIFFS' FOURTH REQUESTS FOR PRODUCTION

### REQUEST FOR PRODUCTION NO. 1:

Please produce any documents from Texas Education Agency (TEA) that relate to Plaintiffs.

**RESPONSE:**